**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:13-cv-03183-WYD-MEH

MALIBU MEDIA, LLC,

     *Plaintiff,*

vs.

LARRY RANGUS,

     *Defendant.*

_____

**DEFENDANT'S MOTION TO DISMISS
UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6)**

_____

Defendant, Larry Rangus, by and through his undersigned attorneys, Hanes & Bartels LLC, moves the Court, pursuant to Fed. R. Civ. Pro. 12(b)(6), for an order dismissing Plaintiff's complaint for failure to state a claim upon which relief can be granted.

In support thereof, Defendant states as follows:

**Introduction**

Plaintiff Malibu is a purveyor of pornography and serial litigator that has brought its business-litigation model to courts across the country. Malibu came into existence in February of 2011 by Collette Field and her husband, Brigham Field, doing business as "X-art.com." It has since filed a tsunami of over 1,600 suits alleging copyright infringement. In the beginning, Malibu's business model was to file lawsuits that joined hundreds of Does in a single case, avoiding

thousands of dollars in filing fees. It alleged that the BitTorrent protocol required use of an interdependent swarm, and thus, Does could be joined regardless of lack of temporal proximity. After a nationwide trend of rejecting this swarm-joinder theory, Malibu is now cherry picking defendants and leveling dozens of suits for alleged infringement of pornographic movies for the purpose of extracting early settlements, to avoid embarrassment, as in the instant case.

### Legal Standard

To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the pleading requirements set forth in Federal Rules of Civil Procedure 8(a)(2). While Rule 8's pleading standard "does not require 'detailed factual allegations,'… it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* 556 U.S. 662, 678, (2009) (citing *Bell Atl. Corp., v. Twombly*, 550 U.S. 544, 555 (2007)).   Consequently, to survive a motion for dismissal, a "complaint's allegations must plausibly suggest that the plaintiff has a right to relief [and raise] the possibility above a 'speculative level'." *Effkay Enterprises. v. J.H. Cleaners, Inc.*, 2008 U.S. Dist.  LEXIS 46127 at *4-5 (D. Colo. June 5, 2008)(citing *Twombly*, 127 U.S. at 1964-65)).  The court is to "assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009), however the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal,* 556 U.S. at 647.   "Nor does a

complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Khalik v. United Air Lines,* 671 F.3d 1188 (C.A.10 2012) (quoting *Twombly*, 550 U.S. at 557)). This "plausibility standard is not akin to a 'probability requirement.' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Patterson v. Dex Media, Inc.,* 2012 U.S. Dist. LEXIS 124067 at *4-5 (D. Colo. Aug. 31, 2012)(citing *Twombly,* 550 U.S. at 556)).

### Argument

**PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED PURSUANT TO FRCP 12(b)(6) BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

### 1. THE AMENDED COMPLAINT FAILS TO CONNECT THE NAMED DEFENDANT WITH ANY ILLEGAL ACTIVITY

Dismissal of this action is warranted as Plaintiff has failed to plead any factual content allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Towmbly*, 550 U.S, at 556)).

In order to set forth a *prima facie* claim of direct copyright infringement Plaintiff must show: (1) ownership of a valid copyright, and (2) actual violation <u>by the defendant</u> of one or more exclusive rights set forth in 17 U.S.C. §106. *See Feist Pubs., Inc., v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361 (1991).

Pursuant to Fed. R. Civ. P. 8(a)(2) a plaintiff must plead facts sufficient to allow the Court to draw the inference that the defendant is liable for the alleged misconduct; in this case direct copyright infringement. However, Plaintiff's

Complaint consists only of a series of lesson statements on the general workings of the BitTorrent protocol followed by the naked assertion that bits of one or more movies were *downloaded from Defendant* (Complaint ¶18, 19, 21 and 22).[1] Without the *factual enhancement* required by *Khalik, supra,* to create a reasonable premises, the very indecisive conclusion that "*On information and belief Defendant downloaded, copied and distributed a complete copy of Plaintiff's movies...*" (Complaint ¶19) does not plausibly suggest that the plaintiff has a right to relief, nor does it raise the possibility above a "speculative level." *See Effkay Enterprises v. J.H. Cleaners, Inc.*, 2008 U.S. Dist.  LEXIS 46127 at *4-5 (D. Colo. June 5, 2008).

In  *Ferring B.V. v. Allergan, Inc.*,**---** F.Supp.2d ----, 2014 WL 988595, (S.D.N.Y. 2014) the court summarized the well accepted criteria for pleading information and belief:

> Second, the only potentially relevant new allegation, that Allergan intended to interfere with Nardi's agreements, is the conclusory statement that "[u]pon information and belief," Allergan "actively, knowingly, and intentionally" requested, shared, and used Ferring's confidential information. ( *See* SAC ¶ 336.) That statement, lacking any factual underpinning—or even the basis of the "information and belief" on which the allegations are pled—"do [es] not fulfill even the liberal [pleading] standard of Rule 12(b)(6)." (emphasis added)

---

[1] While the Complaint in this action is identical in most respects to the same Plaintiff's Complaint filed in Civil Action No. 1:13-cv-02707-WYD-MEH, Plaintiff has added paragraph 19 to the instant Complaint in an attempt to buttress a connection between Exhibit A and the named defendant. However, the additional paragraph stating "On information and belief, Defendant downloaded, copied and distributed a complete copy of Plaintiff's movies…" does nothing but reinforce the main line of this motion that there is no factual assertion in this Amended Complaint that connects this Defendant with the alleged infringement. *Information and belief* is insufficient to support the core issue of the complaint. Furthermore, the paragraph relies on Exhibit A, which is the Achilles' heel of the complaint, as set forth subsequently in this motion.

See also *Furman v. Cirrito* 828 F.2d 898 (C.A. 2 1987) and *ABC Arbitrage Plaintiffs Group v. Tchuruk* 291 F.3d 336, (C.A.5 2002).

Not only does Plaintiff's Amended Complaint not set forth the factual underpinnings for the information and belief, the allegations of paragraph 19 that Defendant downloaded a complete copy of Plaintiff's movies is contrary to the allegations of the preceding paragraph 18 which alleges that IPP downloaded from Defendant one or more bits of the digital movie files identified by the file hashes on Exhibit A. The allegations of paragraph 19 on information and belief are a complete anomaly to the remaining parts of the Amended Complaint and further demonstrate the total failure to plausibly allege a factual connection between this Defendant and any wrongdoing.

Furthermore, Plaintiff's already threadbare Complaint is supported only by allegations of activities conducted by Plaintiff's investigator, IPP International UG, a German company. The only evidence available as to the possible link between the Defendant and the infringing activity alleged in Plaintiff's Amended Complaint is the Declaration of Tobias Fieser, which is an Exhibit to Plaintiff's Motion for Leave to Take Discovery Prior to a Rule 26(f) Conference, however the boilerplate Fieser Declaration is not made a part of the Amended Complaint. Even if it were referenced in the Amended Complaint, it is both factually inaccurate and misleading. While it generally describes the procedure for collecting IP addresses, the Fieser Declaration includes no assertion that such steps were taken in this particular matter. Although the Declaration is designed to imply that the statements made in the Declaration are in support of allegations in some

complaint against some defendant,[2] the implication cannot be applied to the instant Amended Complaint or to this Defendant because they are untrue and misleading on their face. For example, Paragraph 17 of the Fieser Declaration states:

> IPP's software also logged Defendant's IP address being used to distribute third party files through BitTorrent. This evidence is referred to as the Additional Evidence in the Complaint.[3] The Additional Evidence indicates that a person[4] using Defendant's IP address engaged in Bit Torrent transactions associated with 916 number of files between 11/22/2012 and 09/18/2013.

The files referred to in paragraph 17 of the Declaration do not correlate to the files listed in Exhibit A to the Amended Complaint, which cover a period of time from 09/23/2012 to 11/02/2013.  Paragraph 17 of the Declaration obviously refers to some other case! Clearly, the generic Exhibit A referred to in the boilerplate Fieser Declaration is not Exhibit A to the Amended Complaint. Every reference in the Declaration to a hash value or to a movie is generic and is made to apply to the glut of similar cases and has no relevance or connection to the *Amended Complaint* filed in this action against this Defendant. There is no correlation whatever between the dates, times, hash values or movie titles listed in Exhibit A and the Defendant in this action. The Declaration of Tobian Fieser filed in support of a prior motion in this action does not fill in the gaps because

---

[2] Footnote 1 of the Fieser Declaration states that each Exhibit referenced herein refers to the corresponding Complaint Exhibit.

[3] Again, the Amended Complaint in the case attempts, in paragraphs 24-27, to make up for the obvious deficiencies in the 1:13-cv-02707-WYD-MEH complaint by including the words "Additional Evidence." However merely using the words is not a substitute for stating the facts that this "Additional Evidence" is supposed to provide that connects this Defendant with the alleged downloading of bits of the movies identified in Exhibit A to the Amended Complaint.

[4] "a person" does not identify the Defendant in this case.

the facts stated in the Declaration relate to a different case. There is no trustworthy declaration, exhibit or other evidence to support the unfounded allegations and conclusions that form the basis of Plaintiff's Amended Complaint.

Without a supporting affidavit or declaration specific to this Defendant, the mumbo jumbo of allegations in paragraphs 16 - 22 of the Amended Complaint are nothing but "naked assertions" devoid of "further factual enhancement." *See Khalik v. United Air Lines, supra.* There is not a single fact asserted in the Amended Complaint that would justify the allegations in paragraphs 18, 19, 21 and 22 that UG "downloaded from <u>Defendant</u>…"

The plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully and Plaintiff's Amended Complaint fails to meet that standard and should therefore be dismissed.

**2. PLAINTIFF HAS NOT PLED SUFFICIENT FACTS TO ALLOW THE COURT TO DRAW THE REASONABLE INFERENCE THAT THE DEFENDANT IS LIABLE FOR DIRECT COPYRIGHT INFRINGEMENT**

Plaintiff's speculation that "On information and belief, Defendant downloaded, copied, and distributed a complete copy of Plaintiff's movies…." (Amended Complaint ¶19). It is not supported by facts, as required by Rule 8(a)(2). The sole allegation relied upon by Plaintiff in identifying the Defendant as the infringing party is that he was identified by his Internet Service Provider ("ISP") as the <u>subscriber</u> for internet service who was assigned an IP address from which address Plaintiff's agent is alleged to have received bits of Plaintiff's copyrighted works via the BitTorrent protocol.

As a factual matter, any customer of an ISP, such as the moving

Defendant, who connects their computer to the internet via the ISP is assigned an Internet Protocol (IP) address. In addition to the customer's IP address, the ISP's network is also assigned its own IP address. *See generally, LVRHC Holdings v. Brekka,* 581 F.3d 1127, 1130 (9th Cir. 2009). An "IP address is a series of numbers associated with a server or website, and it is used to route traffic to the proper destination on the Internet." *Kirch v. Embarq Management. Co.,* 2011 U.S. Dist. LEXIS 92701 *10 (D. Kan. Aug. 19, 2011)**.** More specifically, an IP address identifies only the <u>location</u> at which one of any number of computer devices may be deployed, especially when used with a wireless router as in the instant action. As a result, one court noted that, "[b]ecause it is common today for people to use routers to share one internet connection between multiple computers, the subscriber associated with the IP address may not necessarily be the alleged infringer." *Bubble Gum Productions, LLC v. Does 1-80,* 2012 WL2953309 at *4 (S.D.Fla. July 19, 2012).

More on point, the United States District Court for the Eastern District of New York has already addressed--in an identical case involving the current Plaintiff, Malibu Media, LLC. and its counsel Mr. Kotzker -- the erroneous assumption that an internet subscriber identified only by an IP address assigned to their account is an infringer, holding that:

> [T]he assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time. An IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones . . . Thus, it is no more likely that the subscriber to an IP address carried out a particular computer function--here the purported illegal

downloading of a single pornographic film -- than to say an individual who pays the telephone bill made a specific telephone call.

*In re BitTorrent Adult Film Copyright Infringement Cases,* 2012 U.S. Dist. LEXIS 1447, at *9 (E.D. N.Y. 2012); *see also Next Phase Distrib., Inc. v. Does 1-27*, 2012 U.S. Dist. LEXIS 107648, at *14-15 (S.D.N.Y. July 31, 2012)(same). The *In re BitTorrent* court further advised Plaintiff, Malibu Media , LLC, and its counsel in unambiguous terms that:

> [It was] concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded "My Little Panties #2." The risk is not purely speculative; Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material. Counsel stated that the true offender is often the "teenaged son ... or the boyfriend if it's a lady." Alternatively, the perpetrator might turn out to be a neighbor in an apartment building that uses shared IP addresses or a dormitory that uses shared wireless networks. This risk of false positives gives rise to the potential for coercing unjust settlements from innocent defendants such as individuals who want to avoid the embarrassment of having their names publicly associated with allegations of illegally downloading "My Little Panties # 2."

*Id.* (citing *Digital Sin, Inc. v. Does* 1-176, 2012 U.S. Dist. LEXIS 10803, at *3 (S.D.N.Y. 2012))

The *In Re BitTorrent* court specifically noted that Plaintiff's original complaint admitted that "IP addresses are assigned to devices" and that, as Plaintiff argued then, that by allowing Plaintiff to discover the individuals associated with those IP addresses, it would "reveal defendants' true identity." *Id.* at *13.  The court flatly rejected this flawed reasoning and correctly determined that identification of the actual infringer would be "unlikely" noting that "most, if

not all, of the IP addresses will actually reflect a wireless router or other networking device, meaning that while the ISPs will provide the name of its subscriber, the alleged infringer could be the subscriber, a member of his or her family, an employee, invitee, neighbor or interloper.'" *Id.*

Contrary to Plaintiff's admittedly self-serving "guess" in identical BitTorrent cases across the country, courts have overwhelmingly recognized, and numerous plaintiff's have even admitted on the record the simple fact that an IP address does not, and cannot identify an infringer, *See SBO Pictures, Inc., v. Does 1-3036,* 2011 WL 6002620, at *3 (N.D. Cal. 2011) ("the ISP subscribers to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes."); *Third Degree Films v. Doe,* 2011 U.S. Dist. LEXIS 128030. *9 (N.D. Cal. 2011)(ISP subscriber information "does not tell Plaintiff who illegally downloaded Plaintiff's works."); *Pacific Century Intern Ltd., v. Does 1-101,* 2011 U.S. Dist. LEXIS 124518 at *2 (N.D. Cal. 2011) (noting that Plaintiff disavowed previous representations to the court that the requested discovery of subscriber's information based on an IP address would allow it to identify Defendants): *Digital Sin, Inc. v. Does 1-5698,* 2011 WL 5362068, at *4 (N.D. Cal. Nov. 4. 2011) (ISP subscribers may not be the individuals who infringed upon Digital Sin's copyright): *see also e.g. In re: Ingenuity 13 LLC,* No. 2:1 I-me0084-JAM-DAD, Order [Doc. No. 24], at *10 (E,D, Cal. 2012) ("the identities of the subscribers associated with the identified IP addresses . . . would not reveal who actually downloaded petitioner's work, since the subscriber's internet connection could have been used by another person at

the subscriber's location, or by an unknown party who obtained access to the subscriber's internet connection without authorization"): *In re Ingenuity 13 LLC* 2012 U.S. Dist. LEXIS 38647 *18 (E.D. Cal. Mar. 20*,* 2012)(ISP subscriber "information alone would not reveal who actually downloaded petitioner's work, since the subscriber's internet connection could have been used by another person at the subscriber's location, or by an unknown party who obtained access to the subscriber's internet connection without authorization" and that petitioner "would be required to engage in further pre-filing discovery to determine if' a viable cause of action existed against any of the identified subscribers."): *Hard Drive Productions Inc. v. Does 1*-130, 2011 WL 553960, at *2 (N.D. Cal. 2011)(Plaintiff concedes, in some cases the Subscriber and the Doe Defendant will not be the same individual"): *VPR Internationale v. Does 1-1017, 2011 U.S. Dist.* LEXIS 64656 at *4 (C.D. Ill Apr. 29, 2011 (noting that "[t]he infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment.").

Even this Court has recognized the results of the simple calculation that an IP address does not equal an infringer. As Judge Martinez noted in *Malibu Media, LLC v. Felitti:*

> [S]ubscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe."

2012 U.S. Dist. LEXIS 103393 at *9-10 (D. Colo. July 25, 2012)(quoting *Third Degree Films v. Does* 1·3577, 2011 U.S. Dist. LEXIS 128030 at *4 (N.D.

Cal. Nov. 4, 2011)). Judge Martinez even went so far as to note the effects of this

disconnect between internet subscriber and actual infringer disclosing that:

> The Magistrate Judge assigned to all BitTorrent cases has noted that defendants are corning forward with a multitude of different defenses. Some are businesses alleging that a patron was the unlawful downloader. Others are elderly grandparents that do not even know what BitTorrent is or how to download a file from the internet: they may have owned the computer associated with the unique IP address, but have no knowledge of whether someone in their household may have used the BitTorrent protocol for the purposes alleged in the complaint."

*Id.*

Of particular interest on this point is the Declaration of Colette Field, co-

owner of Plaintiff Malibu Media, in connection with Plaintiff's Motion for Leave to

Serve a Third Party Subpoena Prior to a Rule 26(f) Conference. She stated in

paragraph 26 of her Declaration:

> We do not pursue our claims against all Doe Defendants. For example, once receiving discovery, we may learn that some Doe Defendants are on active duty in the military, a coffee shop with <u>open wireless</u>, or some other circumstance <u>that would prevent us from pursuing our claims</u>. (emphasis added)

Plaintiff's co-owner acknowledges that IP addresses assigned to open

wireless connections do not identify persons liable for copyright infringement yet

Plaintiff has named this Defendant as the alleged infringer simply because his

name is on the cable bill. There is no allegation in the Amended Complaint that

the IP address identifies a single computer. This central allegation, made on

information and belief, is an outrageous guess as to Defendant's involvement

with copyright infringement. Such legal fiction has been resoundingly rejected by

this and numerous other courts. Rule 8(a)(2) requires more. It requires Plaintiff to

plead facts sufficient to allow the court to draw the <u>reasonable</u> inference, based

on properly plead facts, that the <u>Defendant</u> was the person who <u>actually engaged in the alleged infringing activity</u>. Plaintiff has failed to carry this burden and its Complaint should be dismissed.

### 3.  PLAINTIFF HAS NOT PLED A PRIMA FACIE CASE.

As part of Plaintiff's Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference, Plaintiff asserts that it has pled a prima facie case consisting of two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original, citing *Feist Publ'ns Inc.v. Rural Tel. Serv. Col, Inc.,* 499 U.S. 340, 361 (1991).

Although paragraphs 31 and 32 of Plaintiff's Amended Complaint give lip service to the necessary elements, the factual allegations that must constitute a predicate to such conclusions are absent. The technological intricacies of the BitTorrent protocol are being used to mask the necessary pleading of relevant facts that actually connect the defendant with the allegations of wrongdoing. Moreover, the technical allegations are inconsistent and contradictory and more importantly, do not include the predicate facts for the conclusory allegations of copying constituent elements of the work.

Illustrating the inconsistencies and misleading nature of the Amended Complaint, reference is made to specific paragraphs of the Amended Complaint where argumentative emphasis is supplied by underlining and comments are in brackets [ ] boldface;

12. *In order to distribute a large file, the BitTorrent protocol breaks a file into <u>many small pieces</u> called bits. Users then exchange these <u>small bits</u>*

*amongst each other instead of attempting to distribute a much larger digital file.*
[**In the Amended Complaint, "digital file" = "digital media file" = "a movie"**]

14. *Each bit of a BitTorrent file is assigned a unique cryptographic hash value.*

16. *The entirety of the digital media file also has a unique cryptographic hash value ("file Hash"), which acts as a digital fingerprint identifying the digital media file (.e.g. a movie).*

18. *IPP International UG downloaded from Defendant one or more bits of each of the digital movie files identified by the file hashes on Exhibit A.* [**The downloaded _bits_ are NOT identified by the file hashes on Exhibit A because the file hashes on Exhibit A are the cryptographic hash values of the digital media file, as explained in paragraph 16 of the Amended Complaint**.]

21. *IPP International UG downloaded from Defendant one or more bits of each file has (sic) listed in Exhibit A. IPP International UG further downloaded a full copy of each file hash from the BitTorrent file distribution network* [**"file distribution network" is not the Defendant nor did it come from Defendant's IP address**] *and confirmed through independent calculation that the file hash matched what is listed on Exhibit A* [**Exhibit A matches a bunch of movies downloaded from a file distribution network with movie "file hash" numbers, but makes no connection with this Defendant nor his IP address nor any cryptographic hash values assigned to one or more bits allegedly downloaded from Defendant**.]. *IPP International UG then verified that the digital media file correlation to each file has listed on Exhibit A* [**for example, the**

**movie titled A Perfect Match**] *contained a copy of a movie which is identical (or alternatively, strikingly similar or substantially similar) to the movie associated with that file hash on Exhibit A* [**A Perfect Match**]. [**This conundrum merely alleges that movie A on Exhibit A is identical to movie A on Exhibit A. The statement does not tend to connect this Defendant to anything downloaded by the investigator**]

22. *IPP International UG connected, over a course of time, Defendant's* <u>*one or more bits*</u> *of each digital media file* <u>*as identified by its hash value on Exhibit A*</u>. [**Paragraph 14 emphasizes and explains that each <u>bit</u> is assigned a unique cryptographic hash value, however the bits alleged in this paragraph 22 to have been downloaded from Defendant are <u>not</u> identified by <u>any</u> hash values. The hash values in Exhibit A are "file hashes" of movies—not hash values of bits. The inferred relationship between unidentified <u>bits</u> "downloaded from Defendant" and the whole movies listed in Exhibit A is, on its face, a total misrepresentation calculated to mislead and deceive. Such an intentional misrepresentation cannot serve to create a plausible belief in the allegations of the Amended Complaint.**]

As shown above, a close and critical reading of the allegations of paragraphs 12-22 of the Amended Complaint will demonstrate several significant points that belie a prima facie case and completely undermine plausibility:

(1) the technical allegations, upon which the conclusory allegations are based, are unfounded illogical gibberish intended to obfuscate and confuse;

(2) the "one or more bits" that are alleged to have been downloaded from Defendant are groundlessly morphed into an entire movie, attempting to make it appear that an entire movie was downloaded <u>from</u> Defendant or downloaded <u>by</u> Defendant;

(3) assuming that <u>one or more bits</u> were downloaded from <u>Defendant</u>, which is denied, *one or more bits* of a work does not equate to the required *copying of constituent elements of the work*, that is, copying of the essential elements of the whole work. The magnitude of a "bit" is not defined, but from the explanation in paragraphs 12 and 13 of the Amended Complaint it appears that a bit, or one or more bits, comprise an extremely small portion of a whole digital media file. It is obvious that one or more bits do not form demonstrable intelligence, to say nothing of the "constituent elements" of the whole work.

There is not a single allegation in the Amended Complaint that the *Defendant* had access to or copied the constituent elements of any particular movie identified in Exhibit A. Alleging the downloading of one or more bits does not state a claim of copyright infringement and it does not cross the threshold of possibility.

While the 12(b)(6) standard does not require that a plaintiff establish a prima facie case in its complaint, the elements of each alleged cause of action help to determine whether plaintiff has set forth a plausible claim. *Khalik v. United Air Lines*, 671 F.3d 1188, (10th Cir. 2012). *See* also *Swierkiewicz,* 534 U.S. at 515; *Twombly,* 550 U.S. at 570, 127. Technical double talk, assumptions and

unsupported conclusory statements cannot plausibly suggest that the named defendant infringed Plaintiff's copyright.

**4. THE THREADBARE RECITALS OF THE ELEMENTS OF A CAUSE OF ACTION FOR COPYRIGHT INFRINGEMENT ARE SUPPORTED ONLY BY MERE NAKED CONCLUSORY STATEMENTS DEVOID OF FACTUAL ENHANCEMENT.**

Count I of the Amended Complaint states that by using BitTorrent, Defendant copied and distributed the constituent elements of each of the original works covered by the copyrights in suit. (¶ 32).  Paragraphs 17, 19 and 20 contain the only attempt at factually connecting this Defendant to the conclusions of copyright infringement. However, these paragraphs are devoid of any allegation that Defendant copied or distributed anything, let alone the constituent elements of each of the original works in Exhibit A to the Amended Complaint. Paragraphs 18, 21 and 22 allege that certain bits were downloaded from defendant, relying on an *inference* that Defendant possessed the downloaded bits, but even that inference cannot be extrapolated into Defendant's copying and distributing of constituent elements of the specified works. Applying the generalities of how the BitTorrent protocol is alleged to work to these inferences is soup too thin to pass the plausibility test of *Twombley.* The allegations of paragraph 32 of Count I, which attempt to recite one of the necessary elements of a cause of action for copyright infringement are nothing but naked conclusory statements, devoid of the factual enhancement required by *Twombly, supra.*

**5.  CONCLUSION**

The plausibility of Plaintiff's Amended Complaint is on the same level as a personal injury complaint alleging that the named defendant is the one liable for

plaintiff's injuries, occasioned when struck in the cross walk by a red and white pick up truck, because defendant owns and drives a red and white pick up truck. The Plaintiff has not "nudge[d] [its] claims across the line from conceivable to plausible" *Khalik v. United Air Lines,* 671 F.3d 1188 (10th Cir. 2012). The naked conclusions that attempt to recite the elements of a cause of action for copyright infringement are based solely on an eddy of contradictory and misleading technological assertions that are intended to intimidate the reader with an aura of factual content implied by such imposing terms as "cryptographic," "file hash," "independent calculation," "digital media file," "hash value," "digital fingerprint," "TCP/IP connection," "IPP International UG," "air traffic control," "computer forensic purposes" and the use of 40 digit File Hash values and such official terms as "UTC  Universal Time" in order to endow the Amended Complaint with factual legitimacy. However, when the reader drills down though the technological smoke screen it is discovered that the factual background of the Amended Complaint is nothing but smoke and mirrors cut and pasted from a thousand other complaints and does not provide the "factual enhancement" necessary to support the naked conclusions of copying and distribution by this Defendant.

For all of the reasons set forth above, Plaintiff's Amended Complaint should be dismissed. To quote the District Court for the Central District of California in *Malibu Media LLC v. John Does 1-10,* Case No. 12-cv-03623 (June 27, 2012), "The federal courts are not cogs in a plaintiff's copyright–enforcement business model. The Court will not idly watch what is essentially an extortion

scheme, for a case that plaintiff has no intention of bringing to trial." The 264 cases brought by Malibu Media LLC in this Court since February of 2012 and the absence of trials on the merits give credibility and relevance to the comments of the California court.

Dismissal of Plaintiff's Amended Complaint is respectfully requested.

Respectfully submitted this 25th day of April, 2014.

HANES & BARTELS LLC


/s/Richard W. Hanes
Attorneys for Defendant
Richard W. Hanes, Colorado #1206
102 South Tejon Street, Suite 800
Colorado Springs, CO 80903-2239
Telephone:  (719) 260-7900

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of April 2014, I electronically filed the foregoing **DEFENDANTS' MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6)** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

*Attorneys for Plaintiff:*
Jason Kotzker, Esq.
KOTZKER LAW GROUP
9609 S. University Blvd., #632134
Highlands Ranch, CO  80163


/s/  Lynne R. Krause
Lynne R. Krause, Paralegal